Filed 8/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| CHUBB & SON,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>        Respondent;<br><br>TRACY LEMMON,<br><br>        Real Party in Interest. | A140860<br><br>(San Francisco County<br>Super. Ct. No. CGC 12-520512) |

Attorney Tracy Lemmon filed an employment discrimination lawsuit against her law firm employer, as well as against petitioner Chubb & Son, a division of Federal Insurance Company (Chubb), whose insureds she represented. In response to Lemmon's request for documents relevant to her job performance, Chubb withheld documents (or redacted them) on the ground they contain privileged or confidential information of the third parties for whom Lemmon provided legal services. Further, Chubb insisted, the parties could not disclose any of the third parties' privileged information even to their own attorneys in this case. The trial court ordered that the documents in each party's possession could be disclosed to their respective attorneys, and required Chubb to provide its responsive documents to its attorneys to ascertain whether the material was privileged and to comply with its discovery obligations.

Chubb petitions for a writ of mandate, contending the court's order improperly impinges on the attorney-client privilege and the attorney duty to maintain client

1

confidences. More specifically, Chubb urges that the order impermissibly created an implied exception to the attorney-client privilege, and unlike disclosures that have been allowed where the client holding the privilege is a party to the litigation, the clients in this instance are not parties to Lemmon's employment action.

We will deny the petition. We hold that, for the limited purposes ordered by the trial court, the court did not err in permitting the parties (and requiring Chubb) to disclose the documents to their respective attorneys in this case. Based on the record before us, there is no meaningful distinction between an allegation of privilege as to a party's information and an allegation of privilege as to a third party's information.

## I. FACTS AND PROCEDURAL HISTORY

Lemmon was employed as an attorney by the law firm of Bragg & Kuluva, allegedly as Chubb's in-house counsel, beginning in 2005.[1] She was terminated from this employment in November 2011, purportedly for making misrepresentations in a declaration she filed in court.

In May 2012, Lemmon brought this lawsuit against Chubb, Bragg & Kuluva, and Carol Kuluva (an alleged Chubb employee, attorney, and managing agent of Bragg & Kuluva). Lemmon alleged that her employment was terminated not because of a false declaration or any other aspect of her performance, but because she is a person with disabilities, requested accommodation, and took medical leave. The complaint asserted several causes of action, including disability discrimination under the California Fair Employment and Housing Act (Govt. Code, § 12940), defamation, wrongful termination, and nonpayment of wages.

---

[1] Lemmon contends she worked for Chubb as in-house counsel "through" the Bragg & Kuluva law firm, which she calls "captive counsel." Chubb denies Lemmon worked for Chubb as in-house counsel, but admits that Lemmon worked at Bragg & Kuluva. Chubb also submitted evidence asserting that Lemmon "was employed by Chubb as an attorney at Bragg & Kuluva." As relevant here, the parties do not dispute that Lemmon, while employed at Bragg & Kuluva, represented Chubb's insureds in litigation. Nor is there any dispute that, due to her employment by Bragg & Kuluva, Lemmon is not a traditional in-house counsel.

2

A. Lemmon's Allegations

Lemmon alleged that she consistently met or exceeded all performance expectations from the beginning of her employment through her mid-year review in 2010. Her 2010 mid-year review, which she received shortly before taking medical leave in August, allegedly stated that she had provided "excellent legal representation" and had exceeded expectations.

In August 2010, Lemmon was placed on medical leave by her doctor due to complications with a pregnancy. On November 1, 2010, she returned to full-time work, but took two additional weeks of medical leave in February 2011.

In March 2011, shortly after her return, Lemmon received her 2010 annual performance review. In contrast to her pre-leave mid-year review, her post-leave annual review allegedly stated that she "fell short of her goals" and downgraded her performance rating to "below expectations."

In May 2011, Carol Kuluva learned that Lemmon was occasionally working from home. Although other Bragg & Kuluva attorneys also worked from home, Kuluva reprimanded Lemmon and questioned whether she was actually working. Lemmon claimed she worked from home due to the side effects of medication, and she requested, as an accommodation for her disability, that she be allowed to do so if work obligations permitted it.

In July 2011, Patrick Hoey, to whom Carol Kuluva allegedly reported, audited Lemmon's cases. His audit findings contained negative comments, some of which related to Lemmon's medical leaves. Also in July 2011, Lemmon received her 2011 mid-year review, which downgraded her performance in several areas.

In November 2011, Carol Kuluva accused Lemmon of violating Chubb's "Code of Conduct" by making misrepresentations in a declaration filed with the court. In fact, Lemmon alleged, she had not made any misrepresentations, and the motion to which the

3

declaration related was decided in favor of "Chubb's client."  Kuluva fired Lemmon "on the spot."[2]

B.  <u>Lemmon's Request for Production of Documents</u>

Lemmon served Chubb with a request for production of documents, seeking, among other things, documents referring or relating to her work performance and the termination of her employment.

In its response to the request, Chubb interposed objections to the extent Lemmon sought confidential information of third parties, or documents or information protected from disclosure under the attorney-client privilege, the work product doctrine, or the duty of attorneys to maintain client confidences.

In the parties' ensuing meet-and-confer exchanges, Chubb took the position that any review and redaction of responsive documents would have to be conducted by the parties themselves (e.g., Chubb and Lemmon)—and not their respective counsel in this employment litigation—because the attorney-client privilege precluded Chubb and Lemmon from disclosing the information even to their attorneys.  Lemmon disagreed, but acquiesced in this procedure pending the court's resolution of the issue.

The parties agreed that Chubb would produce documents responsive to four of Lemmon's requests (numbers 5, 9, 17 and 18), redacted if necessary, along with a detailed privilege log, in order to tee up the issues for the court.  These four requests sought documents relating or referring to "[Lemmon's] work performance," "any complaint . . . made about or against [Lemmon] at any time," and "any investigation done

_____

[2]      Chubb admits Lemmon was terminated in November 2011 for allegedly fraudulent and dishonest conduct in connection with misrepresentations it claims she made in a declaration filed with the San Francisco County Superior Court in September 2011.  Chubb explains that Lemmon's declaration sought relief for her failure to timely file opposition papers to a motion for reconsideration. Chubb admits the court denied the motion for reconsideration, which was a favorable ruling for "Chubb's client."  By "Chubb's client," both Chubb and Lemmon apparently mean Chubb's insured, for whom Chubb arranged legal representation pursuant to the terms of its insurance policy, through Bragg & Kuluva and, more particularly, Lemmon.  These clients retained Bragg & Kuluva "to provide legal services and representation in individual litigation matters."

4

into the allegations which formed the basis for [Lemmon's] termination," as well as documents "that [Chubb] contend[s] support its decision to terminate [Lemmon]."

In response to requests 5, 9, 17 and 18, Chubb produced unredacted and redacted documents, withheld some documents, and delivered a privilege log and, eventually, a 52-page supplemental privilege log. The responsive documents fell into four categories.

First, *client feedback letters* were communications from Bragg & Kuluva's "client" (Chubb's insured) to Carol Kuluva, after the firm had sent the client an "end of representation" letter. According to Lemmon, who received copies of at least some of the feedback letters in connection with her annual reviews, the feedback letters pertained to her performance and were not sent to solicit legal advice; Chubb nonetheless withheld these letters in their entirety, claiming a duty of confidentiality to the clients.

Second, *case reviews* were internal documents created by senior attorneys at Bragg & Kuluva who reviewed the files on which Lemmon worked in order to evaluate her performance and suggest alternative tactics. Chubb produced these reviews but redacted information it claimed to constitute attorney-client communications and attorney opinions regarding case strategies.

Third, *internal memoranda and emails* contained evaluations of Lemmon's performance and had not been sent to clients. Chubb also produced these documents, but redacted references to communications with the client.

Fourth, Lemmon's internal 2009 and 2010 annual and mid-year *performance reviews* evaluated Lemmon's work. Chubb produced these documents but redacted direct quotes from client communications.

C. Lemmon's Motion to Compel

Lemmon filed a motion to compel, asserting basically two issues. She maintained that the parties (e.g., Chubb, Lemmon, and Bragg & Kuluva) must provide their respective attorneys in this employment litigation with all relevant information *already* in their possession, including what might be arguably protected by the attorney-client

5

privilege or the work product doctrine, so the attorneys could assert all applicable privileges and make appropriate redactions on the parties' behalf.

In addition, Lemmon sought further production of Chubb's responsive documents. She urged that the client feedback forms could not be withheld because they were not privileged, and could be redacted only to protect truly privileged information. She further urged that information in the internal memos, performance reviews, and case reviews relating to Lemmon's work performance should not be redacted on the basis of attorney-client privilege or work product; even if this information might otherwise be privileged, the privilege would not apply in this case pursuant to Evidence Code section 958, which provides an exception to the attorney-client privilege for "communication[s] relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."

D.  Chubb's Opposition to the Motion to Compel

As to the issue concerning disclosure to the parties' own attorneys, Chubb contended the attorneys should not be allowed to see the arguably privileged and confidential documents and information of Chubb's insureds, because "Defendant [Chubb] and Plaintiff [Lemmon] are duty bound" to maintain the confidences of Chubb's "third party clients."

In regard to the document production, Chubb contended that the documents it withheld and the information it redacted were not subject to disclosure. Chubb claimed the client feedback letters constituted communications in the course of the attorney-client relationship between Kuluva and 23 third party clients who had retained Bragg & Kuluva to represent them in litigation. As to the case reviews, internal memos, emails and performance reviews, many of the documents contained descriptions of communications between attorney and client, including legal strategies. In addition, Chubb argued, the exception to the attorney-client privilege set forth in Evidence Code section 958 did not apply, since the clients were not charging Lemmon with a breach of her professional duties.

E. Pro Tem Judge's Recommendation

After a hearing, Pro Tem Judge Steven Stein issued his report and recommendation. Although he found no applicable statutory exception to the attorney-client privilege, he recommended that "[w]ith appropriate protections, the parties should be permitted—and in fact required for purposes of responding or objecting to discovery—to reveal [attorney-client privileged] facts and documents to their own counsel."

In addition, Pro Tem Judge Stein recommended that the client feedback letters be produced to Lemmon, subject to the redaction of client names, the names of third party witnesses, and settlement amounts, and a strict confidentiality order limiting view of the documents to the parties and their attorneys. The remaining documents (internal memoranda and emails, case reviews, and performance reviews) would be produced by Chubb but redacted to omit the names of third party witnesses and settlement sums (and, as the parties agreed, substituting numbers for client names), without prejudice to Chubb filing a more specific motion for a protective order.

F. Trial Court's Order

After an additional hearing, the trial court issued its written order on December 18, 2013. The court agreed with Lemmon that the parties could disclose arguably privileged material to their attorneys in this litigation: "[T]he Parties are permitted to disclose to their respective counsel attorney-client privileged communications and client confidences of third-party clients for the purpose of consulting with their counsel regarding how to proceed in this case, and particularly with respect to how to proceed in the discovery matters properly before the Court at this time, in accordance with the provisos set forth in *Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal.App.4th 294 (2001)."

Further, the court required Chubb to provide its responsive documents to its defense attorneys for purposes of responding to the subject document requests: "[W]ith respect to the four document requests at issue in Plaintiff's Motion, request numbers 5, 9, 17, and 18, Defendant Chubb is ordered to produce to its counsel, Littler Mendelson, any

7

and all documents that are responsive to these discovery requests. Defense counsel shall thereafter review all documents produced by Chubb and shall, if appropriate, and consistent with this ruling, redact or withhold documents in order to protect the attorney-client privilege and confidential information of the third-party clients. Production of responsive documents shall be completed within thirty (30) days of this Order."

As to the production of Chubb's documents to Lemmon, the court found that "a further review of these documents needs to be done by Defendant's counsel to ascertain and exclude privileged information from non-privileged information." Upon this review, Chubb would produce all nonprivileged material. The parties could thereafter meet and confer regarding any claims of privilege that may be disputed.

In addition, the court ordered that the privileged material could not be further disclosed: "Counsel for the Parties are prohibited from disclosing to anyone else, including the Court, information of third-party clients disclosed by the Parties that is properly identified as attorney-client communication(s)."

Chubb filed a petition for writ of mandate, seeking relief from the court's order. We issued an order to show cause, Lemmon filed a return, and Chubb filed a reply.[3]

## II. DISCUSSION

The essential issue before us is whether Chubb can refuse to disclose to its litigation counsel in this case—and preclude Lemmon from disclosing to her litigation counsel in this case—documents and information that Chubb contends is the privileged or confidential information of its insureds.

The parties' competing arguments distill to this: Chubb argues the attorney-client privilege is regulated by statute, the trial court did not find any statutory exception to the attorney-client privilege, and the court incorrectly relied on an implied exception based on public policy grounds to permit disclosure of the privileged material. Lemmon counters that the court did not rely on any exception (statutory or implied), but simply

---

[3]     We necessarily determined the propriety of writ review when we issued our order to show cause. (*Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 80; see *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205.)

followed case law indicating that a limited disclosure of client confidences by an attorney-litigant to his or her own attorney does not violate the attorney-client privilege. At the heart of the debate are *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164 (*General Dynamics*) and *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294 (*Fox Searchlight*), and whether *Fox Searchlight* may be applied where the attorney-client confidences are held not by a party to the instant litigation, but by Chubb's nonparty insureds to whom Lemmon provided legal services in the past. The parties agree that we review the trial court's decision de novo.

We begin by reviewing the basics of the attorney-client privilege and client confidences, and then discuss the application of *General Dynamics* and *Fox Searchlight* to the matter at hand.

A. The Attorney-Client Privilege and Client Confidences

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years." (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 (*Mitchell*).) Its fundamental purpose is "to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." (*Ibid*.)

By statute, the attorney-client privilege authorizes a client to "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." (Evid. Code, § 954.) Unless otherwise specified, it is the client who holds the privilege and controls disclosure of the confidential communication. (Evid. Code, §§ 953, 954.) Meanwhile, the attorney has the obligation to claim the privilege on the client's behalf. (Evid. Code, §§ 954, 955.)

Because the attorney-client privilege in California is a product of statute (Evid. Code, § 950 et seq.), there are no exceptions to the privilege unless expressly provided by statute. (Evid. Code, §§ 911, 954; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 (*Roberts*) [courts may not imply an unwritten exception to statutory privileges]; *Dickerson v. Superior Court* (1982) 135 Cal.App.3d 93, 99 (*Dickerson*) [rejecting a

9

"stockholder exception" to attorney-client privilege].)  Furthermore, " 'the privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' " (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 732 (*Costco*).)  "Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship."  (*Mitchell, supra,* 37 Cal.3d at p. 599.)

An analysis of the attorney-client privilege in a particular case must begin with an identification of the attorney, the client, and the communication sought to be protected.  (See Evid. Code, §§ 950-952.)  The parties' briefs and analysis in this regard are lacking.  But we glean from the record that the communications Chubb seeks to protect occurred between Chubb's insureds and the Bragg & Kuluva law firm, including Lemmon and Carol Kuluva.  (See Evid. Code, § 954.)  These communications are either the documents that have been withheld (the client feedback letters) or information contained in the documents that have been redacted (case reviews, etc.)[4]

Besides having to claim the attorney-client privilege on a client's behalf, an attorney must maintain the confidential information of present and former clients.  (Bus. & Prof. Code, § 6068, subd. (e)(1) ["It is the duty of an attorney . . . ¶ . . . ¶ [t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"]; Cal. Rules of Prof. Conduct, rule 3-100; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 786 (*Dietz*); see *City and County*

---

[4]     Chubb does not explain why it can refuse to comply with its discovery obligations based on the attorney-client privilege, when Chubb does not purport to be either the attorney or the client.  On the other hand, Lemmon does not contend that Chubb is unable to assert the privilege, and it appears the parties proceeded upon the assumption that there is some duty—or an identity of interest between Chubb and Bragg & Kuluva, or between Chubb and its insureds—such that Chubb may or must assert the privilege on the nonparty clients' behalf.  (See *Rockwell Internat. Corp. v. Superior Court* (1994) 26 Cal.App.4th 1255, 1263; see also Evid. Code, § 916, subd. (a).)  At any rate, the fact is that Chubb *has* invoked the privilege, thus placing at issue the narrow question before us: whether allegedly privileged or confidential material may be disclosed by the parties to their respective attorneys.  We do not decide whether any of the information is privileged.

10

*of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846 [duty of confidentiality survives termination of attorney's representation].) These confidences may or may not be subject to the attorney-client privilege, but must nonetheless be kept confidential by the attorney so as not to cause the client or former client embarrassment or harm. (See, e.g., *Dixon v. State Bar* (1982) 32 Cal.3d 728, 735 [attorney violated Bus. & Prof. Code, § 6068, subd. (e), by including in a declaration gratuitous and embarrassing information about his former client and her sister].)

With these precepts in mind, we turn to the relevant precedents.

B. *General Dynamics*

Although it does not directly resolve the question before us, our Supreme Court's decision in *General Dynamics Corp.*, *supra*, 7 Cal.4th 1164, provides a good contextual starting point for our analysis. There, a former in-house counsel sued his employer (General Dynamics) for terminating his employment (1) in violation of an implied covenant to terminate only for cause, and (2) as retaliation, in violation of public policy. (*Id.* at pp. 1170-1171.) General Dynamics filed a demurrer to the complaint, arguing that an in-house attorney is subject to discharge "at any time, 'for any reason or no reason.' " (*Id.* at p. 1171.) The trial court overruled the demurrer. (*Ibid.*)

Our Supreme Court concluded that the in-house attorney could pursue a wrongful discharge claim against his employer based on both theories: a violation of an implied agreement not to terminate except for cause; and a violation of public policy, based on retaliation, "*provided* it can be established without breaching the attorney-client privilege or unduly endangering the values lying at the heart of the professional relationship." (*General Dynamics, supra*, 7 Cal.4th at pp. 1169, 1179, 1189.)

As to the effect of attorney-client confidences on an in-house counsel's ability to prove a retaliatory discharge claim, the court in *General Dynamics* admonished that "the contours of the statutory attorney-client privilege should continue to be strictly observed" and rejected "any suggestion that the scope of the privilege should be diluted in the context of in-house counsel and their corporate clients." (*General Dynamics, supra*,

11

7 Cal.4th at p. 1190.) "Except in those rare instances when disclosure is explicitly permitted or mandated by an ethics code provision or statute, it is never the business of the lawyer to disclose publicly the secrets of the client." (*Ibid.*)

Nonetheless, our Supreme Court also recognized ways of protecting client confidences in a manner that might permit in-house attorneys to prove their case. "[T]he trial courts can and should apply an array of ad hoc measures from their equitable arsenal designed to permit the attorney plaintiff to attempt to make the necessary proof while protecting from disclosure client confidences subject to the privilege. The use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings, are but some of a number of measures that might usefully be explored by the trial courts as circumstances warrant. We are confident that by taking an aggressive managerial role, judges can minimize the dangers to the legitimate privilege interests the trial of such cases may present." (*General Dynamics, supra*, 7 Cal.4th at p. 1191.)

For our purposes, *General Dynamics* teaches that a former in-house counsel may use privileged information, with careful controls against inappropriate disclosure, in order to pursue a wrongful termination claim against his or her former employer.

C. *Fox Searchlight*

Relying in part on *General Dynamics*, the court in *Fox Searchlight*, *supra*, 89 Cal.App.4th 294, held that an in-house counsel could disclose the client confidences of his former employer to his *own attorney* to facilitate the preparation of his wrongful termination case. This holding warrants further discussion.

In *Fox Searchlight,* a former in-house attorney for Fox Searchlight Pictures, Inc. (Fox), contemplated a lawsuit against Fox for the wrongful termination of her employment, based on her frequent use of pregnancy leave. (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 298.) The attorney consulted a law firm for legal advice and, during those consultations, disclosed ostensibly confidential and privileged information pertaining to Fox. (*Ibid.*) Fox learned of the potential lawsuit and sued the former in-

12

house attorney for disclosing its confidences. (*Id*. at p. 299.) The attorney filed an "anti-SLAPP" motion in response to Fox's complaint, and filed her own complaint against Fox for wrongful termination. (*Ibid*.) Fox then moved to disqualify the former in-house attorney's lawyers. (*Ibid*.)

As relevant here, the court in *Fox Searchlight* held that "in-house counsel may disclose ostensible employer-client confidences to her own attorneys to the extent they may be relevant to the preparation and prosecution of her wrongful termination action against her former client-employer." (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 310.)

The court based its conclusion on three grounds. First, *General Dynamics* necessarily contemplated that a limited disclosure of employer-client confidences to the in-house counsel's own attorney would occur in a wrongful termination case. (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 310.) The court's primary concern in *General Dynamics* was to avoid unwarranted *public* disclosure of the employer's secrets—in other words, disclosure in public records and proceedings—as opposed to mere disclosure from the former in-house counsel to his own attorney, as shown by the language in *General Dynamics* and its indication that the in-house counsel could attempt to prove his case while protecting confidences from disclosure by sealing and protective orders. (*Id*. at pp. 311-312.)[5] Disclosure of client confidences to the attorney-litigant's own attorneys would not constitute a public disclosure, because "[t]he attorneys for the in-house counsel are themselves bound by the rules of confidentiality and attorney-client privilege." (*Id.* at p. 311.) Indeed, if the attorneys representing the in-house counsel are to assist their client in avoiding impermissible public disclosure of the employer's confidences in court proceedings, they must know what the confidential information is. (*Id*. at pp. 312-313.) And if an in-house attorney may introduce privileged communications at trial, she must

---

[5] For example, the court in *General Dynamics* stated: "[T]he in-house attorney who *publicly* exposes the client's secrets will usually find no sanctuary in the courts. Except in those rare instances when disclosure is explicitly permitted or mandated by an ethics code provision or statute, it is never the business of the lawyer to disclose *publicly* the secrets of the client." (*General Dynamics, supra*, 7 Cal.4th at p. 1190, italics added.)

13

be entitled to reveal those communications to her own attorneys before trial. (*Id*. at pp. 313-314.)

Second, the *Fox Searchlight* court reasoned, the former in-house counsel's disclosure of the employer-client's confidences to her own attorney does not violate her duty of confidentiality to her employer, as long as the disclosure is limited to information the in-house counsel reasonably believes is necessary to her attorney's preparation and prosecution of the case. (*Fox Searchlight, supra*, 89 Cal.App.4th at pp. 310-311.)

Third, *Fox Searchlight* observed that fundamental fairness required the former in-house counsel to be allowed to make a limited disclosure to her attorneys to the extent necessary to prepare the wrongful discharge claim. (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 311.) "If the employer can stifle even this limited disclosure, then *General Dynamics* is nothing more than a judicial practical joke." (*Id*. at p. 314.) Once the disclosure is made to the attorney, it is "up to the attorneys, in consultation with the plaintiff, to determine if, when and how this information can be utilized in conformity with the rules laid down in *General Dynamics*." (*Id*. at p. 315.)[6]

D. Application to This Case

In the matter before us, the trial court (1) permitted Lemmon and Chubb to disclose to their own attorneys documents that are subject to the attorney-client privilege or contain the confidential information of Chubb's insureds, for the purpose of consulting with their attorneys on how to proceed in the case and, in particular, with respect to the

---

[6]     Other courts have found that a plaintiff's disclosure of the defendant's confidential or privileged information to the plaintiff's own attorney does not require disqualification of the plaintiff's attorney. (See, e.g., *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 841-844 [attorney may not be disqualified from representing plaintiff for mere exposure to confidential information of defendant, because "a party cannot improperly disclose confidential information to one's own counsel in the prosecution of one's own lawsuit"]; *Bell v. 20th Century Ins. Co.* (1989) 212 Cal.App.3d 194, 198 [attorney not disqualified from representing plaintiff, even if plaintiff had disclosed defendant's confidential information, because plaintiff could not have "improperly disclosed information to her own counsel in the prosecution of *her own lawsuit*"].) These cases, however, do not address whether an *attorney*-litigant may disclose to his or her own attorney the client confidences of a third party.

14

subject discovery; and (2) required Chubb to provide its attorneys with responsive documents to determine what should be produced, withheld, or redacted in response to the four document requests.

The trial court's order, in both respects, is fully consistent with *Fox Searchlight*. Permitting disclosure by Lemmon to her attorneys for the purpose of preparing her case and proceeding in discovery authorizes no greater disclosure than what was approved in *Fox Searchlight*. Requiring disclosure by Chubb to its attorneys for the purpose of complying with discovery and protecting privileged communications is similar—a disclosure confined to attorneys for the litigation purposes of the case—and indeed even narrower than the disclosure approved in *Fox Searchlight*.

More specifically, the three grounds for the disclosures authorized in *Fox Searchlight* support the disclosures ordered here. First, as contemplated in *General Dynamics* and explained in *Fox Searchlight*, the disclosure of the documents would not be a *public* disclosure, but a disclosure solely to the attorneys representing the parties in the wrongful termination case. These attorneys would be precluded from further disclosure by the rules requiring attorneys to maintain confidences of their own client, as well as by the court's order expressly prohibiting further disclosure.

Second, as in *Fox Searchlight*, the disclosure is limited to information each party reasonably believes is necessary for the attorney's preparation and representation in the case. (*Fox Searchlight, supra*, 89 Cal.App.4th at pp. 310-311.) According to the trial court's order, each party may submit privileged or confidential communications "for the purpose of consulting with their counsel regarding how to proceed in this case . . . in accordance with the provisos set forth in [*Fox Searchlight*]."

Third, fundamental fairness requires that Lemmon be allowed to make a limited disclosure to her attorneys to the extent necessary to prepare her claims. (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 311.) Lemmon's claim is that she was discharged due to her disability rather than her performance; Chubb counters that she was discharged because she engaged in professional misconduct, but then limits Lemmon's ability to obtain her counsel's assistance in probing this justification,

15

evaluating her work performance, and determining how to proceed, by unilaterally proclaiming that the information is privileged and not to be seen by anyone's attorneys. An attorney-litigant who is contemplating a wrongful termination action against her former employer must be able to consult meaningfully with counsel to ensure the action can be pursued without a dismissal—and without disciplinary action for improper disclosure of confidences. Attorney-litigants should not be deprived of the right to "independent, candid, professional advice about their ethical duties under their particular circumstances." (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 312.)

Moreover, in addition to these three grounds supporting the limited disclosure in *Fox Searchlight*, we perceive another justification for the limited disclosure ordered by the trial court here: disclosure of the alleged privileged communications and confidences to the parties' respective attorneys in this case ultimately helps to *protect* the privilege and, thus, its holder. If the attorneys representing Lemmon are to assist her in avoiding impermissible public disclosure, "it is essential for them to have complete knowledge of all potentially confidential information known to their client and relevant to the litigation," as only through full disclosure can they "make judgments about what is disclosable and what is not." (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 313.) And if the attorneys representing Chubb are to assist against impermissible public disclosure—and equip the court with the factual and legal arguments needed to uphold any claimed privilege—it is essential for them to see the documents containing the allegedly privileged or confidential information too.

We conclude, therefore, that the trial court's order is consistent with *Fox Searchlight* and is not erroneous. As discussed next, Chubb's arguments to the contrary are unpersuasive.

E. Chubb's Arguments

Chubb contends (1) the trial court erred because it effectively carved out an implied exception to the attorney-client privilege, which can only be limited by statute; (2) *Fox Searchlight* is distinguishable because in this case the attorney-client confidences

belong to third parties (Chubb's insureds) rather than the opposing party in the employment litigation (Chubb or Bragg & Kuluva); (3) *Fox Searchlight* is distinguishable because, Chubb argues, its holding was based in part on the statutory exception to the attorney-client privilege set forth in Evidence Code section 958, which does not apply here; and (4) the trial court's order destroys the attorney-client relationship as we know it. We address each contention in turn.

### 1. Chubb's Implied Exception Argument

Chubb argues that the trial court's order created an implied exception to the attorney-client privilege, which is impermissible because only statutory exceptions to the privilege are allowed. (See *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 206, 209 (*Wells Fargo Bank*) ["[t]he privileges set out in the Evidence Code are legislative creations" and courts "do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification"].) Because only statutory exceptions are allowed, Chubb urges, the attorney-client privilege cannot be abrogated by an implied exception or concerns of fairness or necessity. (Citing *ibid.*; *Mitchell, supra,* 37 Cal.3d at pp. 599-600; *Shannon v. Superior Court* (1990) 217 Cal.App.3d 986, 995, 997-998.)

Chubb misunderstands. Neither *General Dynamics,* nor *Fox Searchlight,* nor the order of the trial court in this case created any *exception* to the attorney-client privilege. None of those courts held that the subject information was not privileged. Nor did they hold that the information could be disclosed to an adversary, the public, or anyone other than the attorneys for the parties who already have the information. To the contrary, the courts all emphasized the importance of the privilege and the need to maintain protections against public disclosure. The trial court in this case merely allowed arguably privileged information to be disclosed to the parties' own attorneys, themselves bound by ethical rules and a court order prohibiting further disclosure, for the limited purposes of ascertaining whether the information *is* privileged, invoking the privilege, and deciding how to litigate the case.

17

To put it slightly differently, the prohibition against disclosure of privileged information under Evidence Code section 954 does not preclude a court-ordered disclosure of allegedly privileged information to a party's own attorney for purposes of preparing a wrongful discharge case or litigating the privilege, where further disclosure is expressly forbidden. While Chubb cites numerous cases for the proposition that the privilege is subject only to statutory exceptions, none of them precludes the disclosure of confidences *to the attorney for a party who already rightfully possesses them.* (See, e.g., *Costco, supra,* 47 Cal.4th at pp. 731-732, 736 [under Evid. Code, § 915, subd. (a), a court may not order disclosure of a privileged opinion letter to a discovery referee for in camera determination of the claim of privilege]; *Wells Fargo Bank, supra*, 22 Cal.4th at pp. 205-206 [attorney-client privilege prohibited the disclosure of confidential attorney-client communications to beneficiaries]; *People v. Gionis* (1995) 9 Cal.4th 1196, 1206, 1212 [statement by a defendant to a lawyer, after the lawyer refused to act as the defendant's attorney, was not privileged]; *Roberts, supra,* 5 Cal.4th at pp. 367-368 [city attorney's written legal advice to a city council did not have to be made public notwithstanding provisions of Public Records Act and Brown Act]; *Mitchell, supra,* 37 Cal.3d at p. 611 [attorney-client communication should not be disclosed to a party-opponent]; *Shannon, supra,* 217 Cal.App.3d at pp. 990-998 [communications between a receiver appointed for a corporation and the receiver's lawyer could not be disclosed to the corporation]; *Dickerson, supra,* 135 Cal.App.3d at p. 99 [no "stockholder exception" to attorney-client privilege].)

### 2. Chubb's Third Party Client Argument

Chubb next argues that *General Dynamics* and *Fox Searchlight* are inapposite, because neither addressed the question before us—whether an attorney-litigant may disclose to her own attorney the privileged communications and client confidences of a *nonparty* client not named as a defendant in Lemmon's wrongful discharge claim.

For purposes of the trial court's order in this case, we conclude that the limited disclosure of the confidences of nonparty clients is permissible for three reasons:

18

(1) the State Bar says so; (2) the record discloses no cognizable distinction between a party's confidences and a nonparty's confidences, and the nonparty's interests have been adequately protected; and (3) Lemmon has as much right to pursue her case as the in-house counsel in *Fox Searchlight*.

### a. State Bar Opinion 2012-183

Whether the attorney-client privilege must be treated differently in wrongful termination cases brought by outside counsel (akin to Lemmon) than it is in cases brought by in-house attorneys (as in *Fox Searchlight*), was addressed by the Standing Committee on Professional Responsibility and Conduct of the State Bar in Formal Opinion No. 2012-183 (Opinion 2012-183). While the State Bar opinion is only advisory, its analysis is instructive. (See *Snider v. Superior Court* (2003) 113 Cal.App.4th 1187, 1198, fn. 4; *Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1043, questioned on other grounds in *Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557.)

In Opinion 2012-183, the State Bar considered the plight of a senior associate who had hired an attorney to represent her in a potential wrongful discharge action against her former law firm. The issue before the State Bar was whether the senior associate could reveal to her attorney information about one of the law firm's clients in the process of seeking legal advice, where the information about the client was inextricably bound to the core of the senior associate's wrongful discharge claim.

The State Bar recognized that the senior associate had a duty of confidentiality to her former clients, which continued after termination of the attorney-client relationship. (Opinion 2012-183, at p. 1.) At the same time, the State Bar noted that "*Fox Searchlight* makes clear that lawyers have the right to disclose employer-client confidential information when seeking legal advice from their own lawyers whether for their own protection or in aid of the client's cause." (*Id*. at p. 2.) Finding that the law firm client's confidential information was necessary for the senior associate's attorney to evaluate her claim against the law firm and properly advise her, the State Bar concluded that the senior associate could reveal only as much confidential information to her attorney as

19

was necessary for the attorney to evaluate her potential claims against the firm. (*Ibid.*) The senior associate could not, however, *publicly* disclose the firm's client's confidential information to pursue her own claims. (*Id.* at pp. 4-5.)

The State Bar also addressed the duty of the senior associate's attorney to protect the confidential information of the law firm's client. Although the attorney had no direct duty to the law firm's client, the attorney had two duties to the senior associate that would effectively protect the confidences from disclosure: the duty under Business and Professions Code section 6068, subdivision (e)(1), to protect from disclosure what the senior associate revealed to the attorney; and a duty of competence under rule 3-110 to avoid harming the senior associate by publicly disclosing her client's confidential information. (Opinion 2012-183, at p. 5.) Because of these protections against public disclosure, there would be no violation of the privilege when the senior associate disclosed the confidences to her attorney.

Opinion 2012-183 supports the trial court's ruling here. The confidential information of the third party clients is needed for Lemmon's attorney to evaluate her claims against Chubb and Bragg & Kuluva and to advise her properly. Her attorney's duties under Business and Professions Code section 6068 and rule 3-110 protect against the further disclosure of these confidences to the public. Accordingly, Lemmon's disclosure of the information to her attorney—even though the information belongs to a *non*party client—does not run afoul of her duty of confidentiality.[7]

---

[7] This justifies *Lemmon's* disclosure of confidences in her possession to her own attorney, notwithstanding her duty as an attorney to maintain client confidences. As to *Chubb's* disclosure of confidences in Chubb's possession to Chubb's attorneys, Chubb has not asserted any similar duty to maintain the confidences of its insureds. To the extent Chubb believes it has a duty under Business and Professions Code section 6068, the State Bar opinion indicates otherwise. Moreover, Chubb provides no reason that it, faced with an obligation to produce documents as a party in pending litigation, cannot confidentially show to its own retained attorneys the documents it claims must be withheld as privileged; such a rule would hinder the attorneys from helping Chubb to comply with its discovery obligations and protect the documents it seeks to protect.

*b. Nonparty Clients' Confidences and Interests*

Chubb does not explain precisely *why* it should make a difference that the client confidences at issue here belong to a nonparty, rather than to the employer that Lemmon is suing. The only thing Chubb suggests is that the nonparty clients would not have expected their confidences to wind up in the hands of an attorney representing Lemmon in employment litigation.

Chubb's argument misses the mark in several respects. In the first place, it is not supported by the record. There is no indication that Lemmon's former clients would be less likely to expect their confidences to be disclosed to Lemmon's attorneys than an in-house counsel's former employer-client would expect its confidences to be disclosed to the in-house counsel's attorneys.

Furthermore, even if Chubb's factual assumption were true, its argument is irrelevant. Chubb is essentially urging that the nonparty clients' confidences should not be disclosed to Lemmon's lawyers (or to their insurer Chubb's lawyers) because the clients did not expect it. But neither the attorney-client privilege nor the extent to which arguably privileged documents might be disclosed to other attorneys is necessarily coextensive with the expectations of the client. To hold otherwise would mean that the confidences of a client who was aware of the privilege (or unaware of a statutory exception) would be protected from disclosure, while the confidences of a client who was not informed of the privilege would not be protected; there is no indication that our Legislature intended this to be the law.

In any event, even if the expectations of the nonparty clients were paramount, the trial court's order in this case adequately protects their interests. The parties' attorneys are under ethical, statutory, and court-imposed duties not to disclose the nonparties' confidences. The disclosure of the confidences to the parties' attorneys equips them to protect those confidences and to present any dispute to the court. And indeed, it can fairly be said that nonparty clients have less to worry about than clients who are actually parties to the litigation, since there is no apparent likelihood that the confidences will be used *against* them in the litigation. Based on the record before us,

21

there is no reason to preclude disclosure to the parties' attorneys merely because the confidences belong to nonparties.[8]

### c. Attorney-Litigant's Interests

Under *Fox Searchlight*, an in-house counsel may share her former employer-client's confidential information with her attorney, so the attorney may give her legal advice about the viability and presentation of her wrongful termination case based on all relevant information in her possession. Chubb does not provide us with any compelling reason an attorney in Lemmon's position should be denied this basic amenity. Nor does Chubb point us to any basis for depriving Lemmon's attorneys of the wherewithal to do their job. Thus, while we do not approve the disclosure to the parties' attorneys *because* of the benefit it offers to Lemmon, we see no reason to deprive Lemmon of that benefit where Chubb is unable to articulate any meaningful justification for doing so.

### 3. Evidence Code Section 958

On another tack, Chubb attempts to distinguish *Fox Searchlight* on the ground that, in addition to its reliance on *General Dynamics* and fundamental fairness, the court in *Fox Searchlight* noted that the exception to the attorney-client privilege set forth in Evidence Code section 958 might come into play in that case, because Fox might defend against the plaintiff's wrongful termination action by claiming it fired her for professional negligence. (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 313, fn. omitted.) Chubb urges that Evidence Code section 958 does not apply here, since Chubb's clients are not claiming Lemmon committed professional negligence; therefore, Chubb argues, *Fox Searchlight* does not apply here either.

---

[8] Neither party contends their attorneys would not adequately protect the privilege and confidences of the third parties in the event of a subsequent dispute over the discoverability of the information, even though the attorneys' allegiance would be to Lemmon and Chubb rather to than those third parties. The attorneys will be able to alert the court (or the third party insureds), as appropriate, if any conflict of interest arises.

Chubb's argument has no merit. Whether or not the exception under Evidence Code section 958 applies in this case, the court in *Fox Searchlight* did not base its ruling on that exception. The court did not cite the exception as one of the "three grounds" on which it expressly based its holding. (*Fox Searchlight, supra*, 89 Cal.App.4th at pp. 310-311.) Rather, the court merely mentioned Evidence Code section 958 to illustrate one of multiple alternative reasons the disclosure would not violate an attorney's duty to maintain client confidences under Business and Professions Code section 6068, subdivision (e). (*Fox Searchlight, supra*, 89 Cal.App.4th at p. 313.)[9]

4.   Importance of the Attorney-Client Privilege and Client Confidences

Lastly, Chubb tells us that the attorney-client privilege is important. It points out that *General Dynamics* and other cases have emphasized an attorney's obligation to safeguard the client's secrets. (See *General Dynamics, supra*, 7 Cal.4th at p. 1190; *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, 458; *Dietz, supra,* 177 Cal.App.4th at p. 791.) It notes that the protection of client confidences involves important public policies and is fundamental to the attorney-client relationship. (Bus. & Prof. Code, § 6068, subd. (e)(1); *In re Jordan* (1972) 7 Cal.3d 930, 940-941; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146.) And it reminds us that clients are more likely to speak candidly with their attorneys when they understand that their confidences will remain confidential. (See *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 744.)

Chubb insists that the trial court's order undermines the trust between the client and attorney and, essentially, will destroy client representation as we know it. Chubb warns: "If the trial court's order is left to stand, no longer will clients be certain that what they disclose in confidence will in fact stay with the attorney and that attorney only. A lawyer would no longer be able to promise to maintain the confidentiality of his or her client's secrets. This will cause clients to think many times before disclosing confidential

---

[9]   We therefore need not and do not resolve the parties' extensive debate as to whether the trial court ruled on the applicability of Evidence Code section 958, and whether Evidence Code section 958 does, in fact, apply to the case.

information to their counsel or circumscribe what they do disclose, neither of which would be desired. The ability to make such a promise of confidentiality is fundamental to the development of trust that is the hallmark of the attorney-client relationship." Further, Chubb argues: "If clients no longer can count on the promise of confidentiality, few if any will be willing to risk the prospect of disclosure of confidences. The candid flow of information from client to attorney will no doubt run dry, making it more difficult for an attorney to provide clients with sound legal advice."

Chubb's prediction that the trial court's order spells doom for the attorney-client relationship is entirely speculative. Even if Lemmon's clients had been told there was a possibility their confidences would be shared with attorneys representing Lemmon if she filed an action against her employer someday in the future—under an order prohibiting the further disclosure of those confidences to anyone else—there is no basis for concluding the prospect would have been so petrifying as to keep them from confiding in Lemmon.

Moreover, while we agree that the attorney-client privilege and the attorney's obligation to maintain client confidences is of fundamental importance, this fact actually works against Chubb in this case. Because the privilege and client confidentiality *are* so important, the relevant issues must be properly asserted and adjudicated; for that to happen, the attorneys in the position of protecting the privilege and client confidences have to know what they are talking about. And for that to occur—at least in this case— the attorneys need to see the documents in which the confidences purportedly appear.

Indeed, the issues of privilege in this particular case are complex. The existence (and perpetuity) of the attorney-client privilege as to communications between or among insureds, insurers, and counsel during the course of the underlying litigation is a thorny enough subject in itself; but the additional level of analysis required here—including, as the parties have already noted, whether evaluations of Lemmon's work performance are privileged or otherwise insulated from disclosure because they discuss legal strategies— makes the adjudication of the discovery issues in this case all the more difficult. The parties, the court, and the unrepresented third parties will benefit from the analysis

24

provided by the attorneys retained in this proceeding if they are fully informed; indeed, the protection of the privilege and third party confidences may necessitate it.

And if there be any doubt in this regard, one need look no further than the record in this case. The retrieval, review, and redaction of Chubb's responsive documents was performed by Carol Kuluva. At the hearings before the judge pro tem and the trial court, Chubb's retained attorney could often assert only an incomplete or very general understanding of the documents and information that Chubb had decided to keep secret. Not surprisingly, Chubb's supplemental privilege log provides only general information about the substance of the allegedly privileged or confidential communications. And the trial court noted the need for Chubb's retained attorneys to examine the documents in Chubb's possession in order to evaluate and defend Chubb's assertions of the privilege.

In light of the precedent of *General Dynamics* and *Fox Searchlight*, the guidance of the State Bar, the interests of the nonparties whose confidential information is at stake, and the policies underlying the attorney-client privilege, Chubb has failed to demonstrate error in the trial court's order.

## III.  DISPOSITION

The order to show cause is discharged and the petition is denied.  The previously issued stay is dissolved.  The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

_____
NEEDHAM, J.

We concur.


_____
SIMONS, P. J.


_____
BRUINIERS, J.

San Francisco County Superior Court, No. CGC12520512, Peter J. Busch, Judge.

Levy Vinick Burrell Hyams, Leslie F. Levy, Sharon R. Vinick and Dari E. Burrell for Plaintiff and Real Party in Interest.

Littler Mendelson, Lindbergh Porter and Kurt R. Bockes for Defendant and Petitioner.