Filed 4/14/26  CJ 4DPlex America v. Choi CA2/1
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CJ 4DPLEX AMERICA, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> KYONG CHOI, <br><br> Defendant and Appellant. | B345455 <br><br> (Los Angeles County Super. Ct. No. 24STCV21079) |

APPEAL from orders of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Affirmed.

The Law Offices of Jeffrey N. Goldberg and Jeffrey N. Goldberg for Defendant and Appellant.

Barnes & Thornburg, Soo Y. Park, Riley Safer Holmes & Cancila, Jennifer Steeve and Nicole C. Cemo for Plaintiffs and Respondents.

_____

In May 2017, respondent CJ 4DPlex America, Inc. (4DX US) hired appellant Kyong Choi as its in-house counsel. Choi left 4DX's employ in September 2021 and, in June 2022, commenced an arbitration for wrongful termination against 4DX US and respondents CJ 4DPlex Co., Ltd., CJ 4DPlex Americas, LLC, and CJ America, Inc. (we refer to respondents collectively as "4DX"). During the arbitration, 4DX discovered Choi had 4DX documents they contended were confidential and/or privileged. After the parties failed to agree on whether Choi was required to disclose what confidential and privileged documents he had and with whom he had shared them, 4DX filed a complaint in superior court over Choi's possession of these documents. 4DX then moved for a preliminary injunction requiring the documents' return. Choi moved to compel arbitration on 4DX's complaint. The court partially granted 4DX's motion and essentially denied Choi's.

On appeal, Choi argues the court erred in: (a) deciding the question of arbitrability (as opposed to deferring the question to the arbitrator); (b) essentially denying Choi's motion to compel arbitration; (c) failing to stay the action until it decided the motion to compel; and (d) partially granting the preliminary injunction. We conclude Choi has failed to demonstrate prejudicial error and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    *4DX US and Choi Sign Agreements*
On May 4, 2017, Choi entered into a Proprietary Information and Investigations Agreement (PIIA), a Confidentiality and Non-Disclosure Agreement, and an arbitration agreement.

## 1. PIIA

Choi (defined in the agreement as "Employee") and 4DX US (defined in the agreement as the "Company") signed the PIIA. In pertinent part, this agreement provided that "[i]f your employment with the Company ends, you will return all Proprietary Information you possess in any form before your last day." It later reiterated: "Immediately upon the termination of your employment or at any time requested by the Company, you shall return all records, documents, equipment created or obtained by you from the Company for Company business." The section further specified: "You are not authorized to retain any copies or duplicates of the returned property and equipment." The agreement added: "Any party shall be entitled to obtain injunctive or other relief for any breach of this Agreement, including rights granted to or reserved for the Employee." The "benefits under this Agreement shall inure to and may be enforced by the Company and any of its subsidiaries, affiliates, successors, transferees and assigns, without further action or consent by Employee."

## 2. Confidentiality Agreement

Choi (defined in the agreement as "EMPLOYEE") and 4DX US (defined in the agreement as the "Company") also signed a confidentiality agreement.

Section I of the confidentiality agreement provided in pertinent part that Choi agreed he would not "directly nor indirectly reveal, report, publish or disclose to any person, firm, or corporation not expressly authorized in writing by the COMPANY to receive such information any Trade and Business Secret, Proprietary and Confidential Information and COMPANY Materials." It provided also: "Upon termination of his/her

employment with the COMPANY or at any time upon written request of the COMPANY, EMPLOYEE will promptly deliver to COMPANY, without copying or summarizing, all Trade and Business Secrets, Proprietary and Confidential Information and COMPANY Materials, that is [*sic*] in his/her possession or under his/her control, including, without limitation, all physical property, keys, documents, lists, electronic storage media, manuals, letters, notes, reports, including all originals, reproductions, recordings, disks, or other media." Section III of the agreement warned Choi the obligations listed in Section I "shall expressly continue in effect beyond EMPLOYEE's employment period."

Section IV of the agreement provided "[t]he COMPANY may, in addition to any other available remedies, apply for and be granted an injunction restraining the breach or threatened breach of this section. Such relief and rights thereto shall be cumulative and in addition to any other legal or equitable rights and remedies with [*sic*] the COMPANY may have."

### 3. Arbitration Agreement

Choi (defined in the agreement as "Employee") and the "COMPANY" additionally signed a "Mutual Arbitration Agreement Form." The agreement defines COMPANY both as "CJ 4D Plex Co., Ltd. (its predecessors, successors, parents, subsidiaries and affiliated companies, if applicable)" and as "CJ 4D Plex Co., Ltd. and related entities, all current and former officers, employees, directors, agents, shareholders, partners, benefit plan, benefit plan sponsors, fiduciaries, administrators or affiliates of any of the above; and all successors and assigns of the above."

4

Section 1 of the agreement provides that "Employee and The COMPANY hereby agree to arbitrate any and all claims covered by this Agreement and that such arbitration shall be the sole and exclusive remedy for resolving any and all such claims or disputes."

Section 3 lists "Claims Covered by this Agreement" and provides that "Except as provided in paragraph '4', claims and disputes covered by this Agreement include any and all claims by Employee against The COMPANY and all claims that The COMPANY may have against Employee, including, without limitation, those arising under:" "Any and all other federal[,] state or local law, ordinance or regulation based on tort or common law," "Any public policy," and "Any other controversy or claim arising out of Employee's employment, termination of Employee's employment and Employee's separation from The COMPANY including any dispute related to any disciplinary action or decision of The COMPANY affecting the Employee's position, status, compensation or benefits."

Section 4 lists "Claims Not Covered by this Agreement," exempting claims "brought and processed by a governmental administrative agency," claims for workers' compensation or unemployment, and any claims "for benefits under The COMPANY plan which provides its own arbitration procedure."

Section 5 specifies "[t]he arbitration will be conducted before a single arbitrator selected in accordance with the rules regarding employment-related disputes set forth by JAMS (Judicial Arbitration and Mediation Services, Inc.) as may be amended from time to time, with the following additional provisions: The arbitrator will be an attorney or retired judge experienced in employment disputes and will be selected either

by mutual agreement, or if the parties are unable to mutually agree by the rules set forth by JAMS and the parties may submit posthearing briefs.  The arbitration shall be governed by the laws of the State of California and will be held in Los Angeles, California or other location to which the parties mutually agree.  All fees and expenses charged by JAMS or the arbitrator relating to the arbitration shall be paid by The COMPANY.  Employee will not be required to pay any fees which would exceed the amount of fees Employee would be required to pay if Employee had pursued Employee's action in court.  Each party shall pay for the fees and costs of its own attorneys, experts, witnesses, transcripts, exhibits, preparation for the proceeding, and briefs unless a party prevails on a claim for which attorney's fees and/or costs are recoverable by statute or contract."  The agreement also contained other provisions regarding the arbitrator's powers, such as specifying "[t]he arbitrator shall be empowered with the right to issue subpoena as to documents and witnesses," could "award damages supportable by the evidence to the extent authorized by California Law," and could "grant remedies in law and in equity."  Moreover, the arbitrator was "only . . . authorized to exercise the power specifically enumerated in this Agreement and to decide the dispute(s) in accordance with the governing principles of law and equity."

Section 6 states arbitration shall be the "exclusive forum" for resolving disputes between Choi and the COMPANY "provided, however, that either party may file a request with a court of competent jurisdiction for equitable relief, including but not limited to injunctive relief, pending resolution of any dispute through the arbitration procedure set forth herein."

### B. *Choi Reveals He Still Has Confidential Documents Through Discovery in Arbitration*

In June 2022, Choi filed an arbitration demand against 4DX. While the demand is not in the record, Choi's attorney described it as asserting "claims against Plaintiffs for discriminating and retaliating against him in violation of California's Fair Employment and Housing Act ('FEHA') (Cal. Gov. Code §§ 12940 et seq.), for retaliating against him in violation of California's Whistleblower Protection Act (Cal. Labor Code § 1102.5), for wrongful failure to promote and constructive discharge in violation of public policy, and for engaging in unfair and unlawful business acts or practices in violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.)."

According to 4DX, "[t]hroughout the course of discovery in the Arbitration, including on November 17, 2022, and November 10, 2023, Choi produced certain Confidential Information," including "(a) disciplinary records for other employees and internal investigation documents into other employees' human resources matters, (b) privileged emails requesting and/or providing legal advice to 4DX US pertaining to contracts and other workplace issues, (c) contracts and other documents (certain of which he created in his role as in-house counsel) summarizing confidential and proprietary information pertaining to 4DX US and other affiliated entities, including signed contracts pre-dating Choi's hire by 4DX US; (d) 4DX Korea's signed contracts with third-party entities; and (e) countless emails pertaining to various aspects of one or more of the 4DX US'[s] operations or personnel issues on which Choi is not even a recipient of said emails." When 4DX propounded a discovery

request that Choi "provide all documents and communications that he retained following the separation of his employment which refer or relate to any business operations or conducting any business by 4DX," "Choi asserted objections and did not respond to this request."

### C.     *4DX Files a Complaint*

In August 2024, 4DX filed a complaint for injunctive relief against Choi, alleging seven causes of action: (1) breach of the PIIA; (2) breach of the confidentiality agreement; (3) conversion; (4) breach of the duty of loyalty; (5) negligence; (6) violation of Penal Code section 502[1]; and (7) unfair business practices.

The complaint alleged that, as 4DX US's general counsel from May 2017 to September 2021, Choi signed agreements requiring him to "maintain the confidentiality of 4DX trade secrets and confidential information" and to "return all 4DX US property and information upon the termination of his employment."  Nevertheless, after Choi voluntarily resigned, he

---

[1] (Pen. Code, § 502, subd. (c) ["any person who commits any of the following acts is guilty of a public offense: [¶] . . . [¶] (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network"]; *id.* at subd. (e)(1) ["In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief"].)

retained "extensive amounts of Plaintiffs' property, trade secrets, and information."

4DX requested Choi "return all Plaintiffs' documents and all copies of the same," "segregate, preserve, and present for independent third party inspection all computers and electronic devices which contain Plaintiffs' information or have contained such information since he voluntarily resigned his 4DX US employment," and "provide a sworn statement detailing all instances in which has shared such information or used such information on behalf of any non-Plaintiff entity since his 4DX US employment ended."  Choi refused, and "threatened to disclose such information."  4DX also alleged, on information and belief, that Choi was using the information in his new job.

4DX sought a permanent injunction ordering Choi to refrain from disclosing or using the confidential information, to provide a list of the materials he removed, provide a list of the people to whom he disclosed the information and details regarding the disclosures, return the information and all copies to 4DX, sign a declaration under oath that he had done these things, and delete all references to the information.

###### D. *4DX Seeks a Temporary Restraining Order in Court*

In September 2024, a little over three weeks after filing the complaint, 4DX filed with the Writs and Receivers Department an ex parte application for a temporary restraining order and an order to show cause why a preliminary injunction should not

9

issue.[2]  4DX asked the court to restrain Choi from sharing or using any of 4DX's confidential information, and from destroying any electronic media that contained the information.

Choi opposed the ex parte application.  In his declaration supporting his opposition, he avowed he had not disseminated and would not disseminate any of the confidential documents "other than providing limited Documents to my counsel," did not believe he had deleted any of the documents and would not do so unless ordered to do so or the parties agreed he should do so, and would use the documents "for the sole purpose of pursuing my claims against Plaintiffs in the arbitration or, if necessary, defending against Plaintiffs' claims in this action."  He also specifically denied sharing the documents with his current employer, stating there "would be no reason whatsoever" for him to do so because his current employer and 4DX "are not competitors and are not even in the realm of similar business."

The court (Judge Stephen I. Goorvitch) denied 4DX's ex parte application "without prejudice to Plaintiffs seeking relief before the arbitrator."  Regarding whether the confidential information could be used in arbitration, the court held that "the arbitrator, not this court, should make decisions concerning the use of evidence in the arbitration."  The court continued that "[t]o the extent Plaintiffs seek an order precluding the use of the documents in the instant case, there is no exigency.  The instant case was filed only 24 days ago; Plaintiff has not filed a proof of service of the summons and complaint; and discovery has not

---

[2] 4DX originally filed the application in the department before which the case was being heard, but that court issued a minute order taking the application off-calendar and stating it "should be heard in the Writs and Receivers Department."

10

commenced. Therefore, Plaintiffs should file a noticed Motion for a Preliminary Injunction before the home court (Chang, J.)."

However, because Choi stipulated he would "preserve the documents at issue, as well as the electronic storage devices on which any electronic documents are contained, pending the resolution of the instant case (24STCV21079)," the court issued "a preliminary injunction to that effect per the parties' stipulation."

### E.    *4DX Files a Motion for Preliminary Injunction in Court*

#### 1.    The Motion

In November 2024, 4DX moved the court (Judge Wendy Chang) for a preliminary injunction, requesting an order that Choi: (a) refrain from violating the PIIA and confidentiality agreement; (b) return all 4DX's property and confidential information including all copies of the same within one week of the order granting the preliminary injunction; (c) provide a list of all 4DX's property and confidential information that he removed from 4DX US, and possessed at any time after his employment with 4DX US ended; (d) provide a list of all individuals to whom he or his counsel disclosed each item on the list; (e) deliver to 4DX each item on the list, including any copies, summaries, extracts, and/or other documents that reference any materials in the list; (f) refrain from disclosing, reviewing, sharing, transmitting, and using any of the 4DX's confidential, proprietary, trade secret information, attorney-client information and attorney work product that he removed from 4DX US; and (g) provide a signed declaration that the list of items and individuals provided is accurate, and that all requested items were returned.

11

The declaration would also include the details of any dissemination of the confidential materials.

The motion recounted 4DX's allegations that Choi breached both his contracts with 4DX and his ethical obligations as an attorney by failing to return confidential documents he obtained while working for 4DX US despite repeated requests to do so. 4DX contended these facts meant it was likely it would prevail on its claims. It additionally argued it faced irreparable harm without the injunction, because Choi refused to return 4DX's information, or even tell 4DX the scope of the information he had, and "continued to threaten unauthorized disclosure of Confidential Information, including attorney-client privileged information, through the course of the Arbitration."

The motion also explained 4DX could pursue this remedy in court, as opposed to through arbitration, because the arbitration agreement had a specific carveout for injunctive relief, and because its claims were separate from the arbitration Choi filed. Finally, 4DX preemptively explained Choi could not use a "whistleblower" defense to excuse his use of confidential and privileged information.

4DX's motion for preliminary injunction was initially scheduled to be heard in January 2025, and Choi's motion to compel arbitration—discussed below—was initially scheduled to be heard in March 2025. Pursuant to the parties' stipulation, the court ordered the motion to compel arbitration to be heard in January 2025, and the motion for preliminary injunction to be heard in March 2025.

### 2. Supplemental Briefing

In February 2025, the court ordered further briefing on the State Bar of California Standing Committee on Professional

Responsibility and Conduct Formal Opinion No. 2012-183. In a supplemental brief, 4DX argued the opinion "confirms that when a former in-house attorney's retaliatory discharge or wrongful termination claim depends on breaching the [attorney-client] privilege, the claim must be dismissed" and because Choi's "wholesale seizure and use of Plaintiffs' privileged information during depositions and discovery in his retaliation action contravene these basic tenets," 4DX was entitled to the injunctive relief it sought.

### 3.     Opposition

In February 2025, Choi opposed the motion for preliminary injunction. Choi contended the motion should be denied because: (a) it would upset the status quo; (b) in denying 4DX's ex parte application for a temporary restraining order, the court had already held the arbitrator should decide whether 4DX was entitled to relief, and this was the "law of this case"; (c) 4DX's delay in seeking relief demonstrated there was no imminent harm; (d) Code of Civil Procedure section 1281.8 permitted a court to issue injunctive relief only when an arbitrator could not, which was not the situation here; (e) the requested injunction was vague and overbroad; and (f) 4DX failed to demonstrate they were likely to succeed on the merits of their claims.

### 4.     Ex Parte Application to Stay

In March 2025, Choi filed an unopposed ex parte application to stay all matters before the court except for the motion to compel arbitration on the grounds that: (a) under Code of Civil Procedure section 1281.4, Choi was entitled by statute to have his motion decided before any other matters; and (b) 4DX refused to comply with notices of deposition and requests for

13

production of documents "which are reasonably likely to lead to the discovery of admissible evidence which is relevant and material to the resolution of Plaintiff's Motion for Preliminary Injunction."

4DX filed a notice of non-opposition, clarifying that Choi had already taken the deposition of the sole fact witness who had provided a declaration to support their motion for preliminary injunction, but Choi had unilaterally noticed depositions for seven other witnesses in a two-week period, and both counsel and the witnesses were unavailable for the noticed times.

The court partially granted the ex parte application by "severing any claims that are being addressed in arbitration from any pending motion."[3]

### 5. Reply

In their reply, 4DX argued that: (a) the court's severance of claims addressed in arbitration meant there was no longer any concern the court was overstepping its jurisdiction in considering 4DX's motion; (b) 4DX was likely to prevail on the merits because Choi was not entitled to retain the confidential information, and

---

[3] While the minute order for the hearing reflects no court reporter transcribed the hearing, 4DX characterized the court's action as "sever[ing] any issues arising out of Mr. Choi's employment and stay[ing] those matters pending the resolution of the motion to compel arbitration, but . . . further order[ing] that the issues connected with Mr. Choi's hoarding of confidential information after his employment ended are properly addressed by this Court on Plaintiffs' Motion for a Preliminary Injunction." 4DX added that the court expressly stated, "[I]t does not intend to make any ruling regarding the use of the material in the arbitration."

14

4DX would suffer irreparable harm; and (c) 4DX had already provided Choi with discovery relating to the motion for preliminary injunction.

### F. *Choi Moves to Compel Arbitration*

In November 2024, three and a half weeks before filing his motion to compel arbitration, Choi propounded written discovery on 4DX and noticed the deposition of 4DX US's chief executive officer.

### 1. The Motion

In December 2024, Choi moved to compel arbitration and stay the action, arguing 4DX's complaint was arbitrable pursuant to the arbitration agreement, and that it was the arbitrator who was to decide whether the complaint was arbitrable. Choi argued the carveout in the arbitration agreement permitting parties to seek equitable relief in court "pending resolution of any dispute through the arbitration procedure set forth herein" permitted parties to seek only provisional relief. Choi added that, regardless of the arbitration agreement, 4DX was "prohibited from seeking preliminary injunctive relief in court given the pendency of the Arbitration in which the arbitrator is already vested with the jurisdiction and authority to issue injunctive relief" because California law "authorizes provisional remedies such as preliminary injunctive relief in connection with an arbitrable controversy 'only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief,' " which grounds were not alleged and did not exist.

15

### 2. The Opposition

In January 2025, 4DX opposed Choi's motion to compel arbitration, arguing the complaint sought only equitable relief, which was expressly permitted by the arbitration agreement, regardless of whether 4DX could also seek such relief in arbitration. 4DX also disputed Choi's claim that the carveout permitted only provisional relief, arguing such an interpretation lacked support in the agreement. 4DX additionally argued Choi waived his right to arbitration of the newly filed case when he served discovery, noticed a deposition, and served a motion for sanctions under Code of Civil Procedure section 128.7 in that case.[4] 4DX also contended the arbitration agreement was "*utterly silent* as to who decides issues of arbitrability."

### 3. The Reply

Choi filed a reply reiterating his points and denying he had waived his right to compel arbitration, contending his service of discovery and a motion for sanctions were not inconsistent with his intent to enforce his right to arbitration.

Five days after Choi filed his reply, the court continued the hearing to February 2025. At the February 2025 hearing, the court heard argument from both parties and then took the motion under submission. The next day, the court continued the hearing

---

[4] Although the motion for sanctions is not in the appellate record, according to the declaration of 4DX's counsel in opposing the motion to compel arbitration, "[o]n December 23, 2024, just a few days after filing his Motion to Compel Arbitration, Defendant served Plaintiffs with a Motion for Sanctions against Plaintiffs and their counsel pursuant to Code of Civil Procedure § 128.7."

16

on the motion to compel arbitration to the same date and time as the hearing on the motion for preliminary injunction.

### G. *The Court Partially Grants and Partially Denies the Motions*

At the March 2025 hearing on the parties' motions, the court announced its tentative rulings and heard arguments from counsel. It then issued a minute order setting forth its ruling.

#### 1. Motion to Compel Arbitration

As to the motion to compel arbitration, the court severed "the claims related to actions taken after the termination of the Defendant's employment with the Plaintiff and DENIES the Motion to Compel Arbitration as to those claims." It added that "[t]he Motion to Compel Arbitration is GRANTED as to the events predating and up to termination of the employer/employee relationship with the Plaintiff."

#### 2. Motion for Preliminary Injunction

As to the motion for preliminary injunction, the court also partially granted it, stating a copy of the proposed order granting it was e-mailed to counsel, and providing that Choi had three days to file any objections, and 4DX had three days thereafter to file any reply.

Fifteen days after the hearing, the court issued an order partially granting the motion for preliminary injunction.

17

### (a) Order Granting the Motion

#### (i) Court's Jurisdiction to Consider the Motion

First, the court found section 6 of the arbitration agreement "plainly allows Plaintiffs to seek preliminary equitable relief as they do in the present motion, 'pending resolution of any dispute through the arbitration procedure set forth herein.'" Additionally, the court "independently finds that legal and ethical obligations arising out of the attorney client relationship to acts (either new or continuing) that post-date Defendant's termination is not a claim within the scope of the arbitration agreement in the first instance." The court found Judge Goorvitch's September 2024 order did not bar its current consideration of 4DX's motion because that ruling "expressly allows the present motion," which was "broader than merely the use of evidence in arbitration." "[C]onsistent with the September 13, 2024 order, the Court expressly clarifies that this ruling addresses only the issues outside of four corners of the arbitration; the questions regarding the use of evidence within arbitration are reserved for the arbitrator and to the extent this motion requests an order [that] contradicts the September 13, 2024 order, that part of the motion is DENIED."

#### (ii) Likelihood of Success on the Merits

After extensively discussing the duty of confidentiality an attorney owes to his clients even after termination of the attorney-client relationship, the court stated that "Wrongful possession and/or use of former client confidential information that he is not legally entitled after termination can potentially be

18

actionable conversion independent of the employment status, and is a potential violation of the duty of loyalty and the duty of care under a negligence claim, independent of the employer/employee status. Thus, the Court need not resolve the question of whether the arbitration clause governs the PIIA and CNDA violations that post-date Defendant's employment for the purposes of this motion. The Court need only find, and does find, that the Plaintiffs have met their burden to show a likelihood of success on the conversion, negligence and breach of duty of loyalty claims. This is sufficient for the purposes of this motion."

### (iii) Irreparable Harm

The court found significant the fact that, while Choi "declares that he *would* not improperly use the documents beyond the arbitration, the fact remains that he *could* do so, as he is fighting this injunction even after this Court has made clear before this hearing that the Court's ruling will be limited in scope to non-arbitration." Additionally, the court found that once privileged or confidential information was disclosed, " 'there is no way to undo the harm which consists in the very disclosure' " and that a " 'loss of privilege against disclosure' " " 'plainly threatens immediate harm.' "

The court also noted that "because Plaintiffs do not know precisely what information Defendant took, they are unable to effectively determine what actions they must take, and what they must do to ensure that Defendant will keep to his word and use the documents only in arbitration."

### (b) The Preliminary Injunction

The injunction required Choi to:

First, return all 4DX's "property and/or confidential information, any copies and/or summaries, extracts and/or derivative work and/or other documents that reference said property and/or confidential information in any way, except that Defendant may retain copies of documents provided by the Parties in discovery in the arbitration, subject to the protective order in place in the arbitration, and subject to further order by the arbitrator regarding any use thereof in the arbitration. Defendant may not use, disclose, or reference these documents outside of the arbitration proceedings or the proceedings in this Court, either publicly or privately."

Second, "provide a complete list of all Plaintiffs' property and confidential information that Defendant has possessed at any time since his employment with 4DX US ended (referred to as the 'Catalogue') with sufficient detail to permit this Court to identify each item with specificity."

Third, to the extent not covered under the first point, deliver to 4DX each item in the Catalogue, subject to the same exception of retaining documents provided through discovery, and subject to further orders in arbitration.

Fourth, identify all individuals to whom he or his counsel had disclosed the information, along with the date, method, and purpose of the disclosures.

Fifth, refrain from "disclosing, reviewing, sharing, transmitting, and using" any of the confidential information outside the arbitration or this proceeding.

Sixth, keep, if he wanted, copies—not originals—of work product he created for 4DX during his employment, "subject to compliance with all of his ethical obligations relating his handling of the same."

Seventh, provide a declaration signed under penalty of perjury that the information provided was accurate, that all ordered actions had been completed, and that—except as permitted by the injunction—all items in the Catalogue had been returned and neither Choi nor his agents kept any copies.

The injunction also ordered 4DX to "promptly make an exact mirror image of any electronic information, and an exact duplicate copy of any physical information, received by Plaintiffs[] from Defendant pursuant to this order, and maintain that exact mirror image and those exact physical copies with no changes in a segregated and secure place until further order of this Court."

The injunction exempted "documents protected by the attorney client privilege and work product between Defendant and his attorneys of record in the arbitration or in this Court proceeding," subject to production of a privilege log.

The injunction again specified that "[t]he arbitrator retains discretion to make all decisions regarding any documents used in the arbitration. To the extent this motion requests an order [that] contradicts the September 13, 2024 order reserving to the arbitrator the right to decide matters within the four corners of the arbitration, that part of the motion is DENIED."

Choi timely appealed.

## H.  *4DX Dismisses Some Claims*
At Choi's request, we take judicial notice of a September 24, 2025 Request for Dismissal filed by 4DX, dismissing without prejudice their causes of action for breach of the PIIA (first cause of action), breach of the confidentiality agreement (second cause of action), violation of Penal Code section 502 (sixth cause of

21

action); and unfair business practices (seventh cause of action). The clerk entered the requested dismissal that same day.

## DISCUSSION

### A. *The Court Was Entitled to Decide Arbitrability*

Choi and 4DX both admit "parties to an arbitration contract must clearly and unmistakably agree that arbitrators will have power to decide their own jurisdiction; otherwise the question of whether arbitrators have jurisdiction is for the court." (*Gilbert Street Developers, LLC v. La Quinta Homes* (2009) 174 Cal.App.4th 1185, 1190.) Choi contends such a clear and unmistakable agreement occurred because the arbitration agreement "provides that the arbitration will be conducted 'in accordance with the rules regarding employment-related disputes set forth by JAMS (Judicial Arbitration and Mediation Services, Inc.) as may be amended from time to time . . . ,' " and these rules provide that the arbitrator decides arbitrability.

Both parties agree that "[w]e review the trial court's interpretation of an arbitration agreement de novo where no conflicting extrinsic evidence exists." (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 785.)

Contrary to Choi's assertion, the arbitration agreement does not state the arbitration will be conducted in accordance with JAMS's employment-related dispute rules. Instead, it provides that "[t]he arbitration will be conducted before a single arbitrator *selected in accordance with the rules regarding employment-related disputes set forth by JAMS*." (Italics added.) Thus, Choi's citations to *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110 (*Rodriguez*) and *Dream Theater, Inc.*

22

*v. Dream Theater* (2004) 124 Cal.App.4th 547 (*Dream Theater*) are inapposite.

In *Rodriguez*, the parties' arbitration agreement provided that "any controversy or claim arising [out] of or related to this Agreement or the breach of any provision thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise." (*Rodriguez, supra*, 136 Cal.App.4th at p. 1116.) Because rule 8(a) of those rules "specifies the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope* or validity of the arbitration agreement' [italics added]," by incorporating the AAA rules, "the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability." (*Id.* at p. 1123.) Similarly, in *Dream Theater*, "[t]he Contract specifies that arbitration will be in accordance with the AAA Commercial Arbitration Rules. These rules provide that the arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' " (*Dream Theater, supra*, 124 Cal.App.4th at p. 550.)

Here, by contrast, Choi has not cited to, and we have not found, a provision in the arbitration agreement incorporating JAMS procedures wholesale.

Choi argues 4DX's contention that JAMS's rules were limited to arbitrator-selection "cannot be reconciled with the full language of Section 5 of the Arbitration Agreement (or how the Arbitration has been conducted pursuant to JAMS'[s] Employment Rules and Procedures for more than three years

23

without objection).  Section 5 provides for the application of JAMS'[s] employment-related rules 'with the following additional provisions,' all but one of which do <u>not</u> relate to the sole issue of arbitrator selection.  Section 5 supplements the applicable JAMS rules by providing the governing law for the arbitration, the location of the arbitration, and by setting forth the expenses, fees, and costs that can be required to be paid by the parties and potentially recovered by the parties pursuant to statute or contract."  We are unpersuaded.

Preliminarily, nothing in the record informs us "how the Arbitration has been conducted" up to this point, whether it has been in accordance with JAMS's employment-related rules, or, if it has, how that came to be.

Moreover, nothing in the arbitration agreement expressly states that section 5 is intended to augment JAMS's employment arbitration rules.  Even under Choi's argument, it is at the very least ambiguous whether the parties intended these rules to apply in deciding whether a controversy was arbitrable in the first place.  Absent a clear and unmistakable direction that the arbitrator was to make this decision, we should not assume the parties agreed to arbitrate arbitrability.  (See *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 ["Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"].)

## B. *The Court Did Not Err in Partially Denying Choi's Motion to Compel Arbitration*

Section 6 of the arbitration agreement expressly states that arbitration is the exclusive forum for resolving "all disputes arising out of or involving the Employee's employment with The

COMPANY or termination of that employment . . . provided, however, that either party may file a request with a court of competent jurisdiction for equitable relief, including but not limited to injunctive relief, pending resolution of any dispute through the arbitration procedure set forth herein." 4DX argues this carveout permits it to file a complaint seeking permanent injunctive relief.

Choi contends 4DX's interpretation "cannot be reconciled" with the rest of the arbitration agreement because "the Arbitration Agreement permits the parties only to seek *provisional* relief in court '*pending resolution of any dispute through the arbitration procedure set forth herein.*'" He adds that section 6 "permitted Respondents to seek provisional injunctive relief from the court *before* the parties' Arbitration was ongoing," but not afterward.

But section 6 does not limit the type of injunctive relief available to provisional relief—it permits either party to "file a request with a court of competent jurisdiction for equitable relief, including but not limited to injunctive relief." Injunctive relief includes permanent injunctive relief. Nor does section 6 preclude 4DX from seeking such relief after an arbitration has begun—the provision reads "pending *resolution of any dispute through* the arbitration procedure set forth herein" and not "pending *commencement* of the arbitration procedure set forth herein." "Resolution of any dispute" is the opposite of "commencement." Choi's interpretation contradicts the plain meaning of the phrase.

Black's Law Dictionary defines "pending" as "Throughout the continuance of; during" or "While awaiting; until." (Black's Law Dict. (12th ed. 2024).) Thus, permitting a party to seek injunctive relief "pending resolution of any dispute through the

25

arbitration procedure set forth herein" permits either party to seek equitable relief from court during the period in which any dispute is being resolved through arbitration proceedings or until such resolution. Either interpretation permits 4DX to file its complaint for permanent injunctive relief.

Choi also argues 4DX's interpretation contradicts sections 3 and 4 of the mutual agreement, which list the "Claims Covered by this Agreement" and the "Claims Not Covered by this Agreement," respectively. We disagree. Sections 3 and 4 specify the types of *claims* covered and not covered by the agreement. Section 6 exempts from mandatory arbitration all claims for *equitable remedies*. (See *Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 12 ["Where general and specific provisions are inconsistent, the specific provision controls"].) Nor does this interpretation contradict section 5 of the agreement, which provides that the arbitrator may grant injunctive relief—section 5 does not state *only* the arbitrator may grant injunctive relief.[5]

Finally, we note the parties signed the confidentiality agreement on the same day they signed the arbitration agreement. The confidentiality agreement specified that Choi's obligation to not disclose any confidential information continued after his termination and expressly stated that 4DX could, "in addition to any other available remedies, apply for and be granted an injunction restraining the breach or threatened breach of this section. Such relief and rights thereto shall be cumulative and in addition to any other legal or equitable rights

_____

[5] Indeed, if *only* the arbitrator could grant injunctive relief, it would make no sense to permit a party to seek injunctive relief from a court pending the "resolution" of the dispute in arbitration.

and remedies with the COMPANY may have." Additionally, "[a]ll actions, arbitrations and proceedings arising from or in connection with the Agreement or the employment it creates shall be commenced and maintained in Los Angeles County, State of California."

Although 4DX has dismissed its claim for breach of the confidentiality agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) In other words, in determining whether the Arbitration Agreement permits 4DX to seek permanent injunctive relief in court, we should consider the provisions of the contemporaneously executed confidentiality agreement.[6]

The confidentiality agreement permits 4DX to request injunctive relief if Choi disclosed confidential information after his termination. The agreement's provision that any "actions" or "arbitrations" arising from the agreement would be commenced in Los Angeles indicates the injunction could be sought in both an "action" or an "arbitration." "Action" implies a complaint filed in court. These provisions lend further support to 4DX's contention that the arbitration agreement permitted the parties to seek equitable relief both in court and in arbitration.[7]

---

[6] Thus, although Choi argues that the dismissal of the cause of action for breach of the confidentiality agreement "confirms that the Confidentiality Agreement cannot serve as a standalone basis for judicial adjudication of permanent injunctive relief," we do not use it in that manner.

[7] Because we conclude the arbitration agreement expressly permitted 4DX to seek equitable relief in court, we need not consider Choi's contention that the court erred in finding 4DX's
*(Fn. is continued on the next page.)*

27

**C.** ***Choi Has Failed to Demonstrate Prejudice From the Trial Court's Failure to Stay the Action***

Choi argues that, under Code of Civil Procedure section 1281.4, the court was required to stay the action until it ruled on his motion to compel arbitration.[8]  Choi further contends the court committed reversible error by "weigh[ing] and consider[ing] the merits of Respondents' Motion for Preliminary Injunction – *which necessarily required the court to consider the merits of Respondents' claims* – in deciding Appellant's Motion to Compel Arbitration."  We disagree.

Choi cites nothing in the record demonstrating the court improperly considered the merits of 4DX's claims—he simply argues that it is "clear" from the court's actions that this occurred.  We do not find it "clear."  " 'In the absence of evidence to the contrary, we presume that the court "knows and applies

---

claims not subject to arbitration because they occurred after his termination.  (See, e.g., *Pacific Fertility Cases* (2022) 85 Cal.App.5th 887, 892 [" ' "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record" ' "].)  Nor need we consider Choi's argument that 4DX was not entitled to equitable relief under Code of Civil Procedure section 1281.8—because 4DX's complaint was not subject to arbitration, that section is inapplicable.

[8] (Code Civ. Proc., § 1281.4 ["If an application has been made to a court of competent jurisdiction . . . for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined . . ."].)

the correct statutory and case law." ' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 403.)

Moreover, Choi does not demonstrate how the court's failure to stay the action prejudiced him in any way. (See, e.g., *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["article VI, section 13 [of the California constitution] generally 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial' "].) As discussed above, the court did not err in partially denying his motion to compel arbitration. Choi does not explain what a stay of the action would have accomplished, except perhaps for delaying the court's ruling. Choi does not claim he lacked sufficient time to prepare an opposition to 4DX's motion.

### D. *The Court Did Not Err in Partially Granting the Preliminary Injunction*

"On appeal from the grant of an injunction, we review the court's legal determinations de novo and its factual findings for substantial evidence, interpreting the evidence in the light most favorable to the plaintiff and indulging in all reasonable inferences in support of the trial court's order. The ultimate decision rests in the trial court's discretion and will not be reversed unless it exceeds the bounds of reason or contravenes uncontradicted evidence." (*Mattson Technology, Inc. v. Applied Materials, Inc.* (2023) 96 Cal.App.5th 1149, 1159.)

#### 1. The Preliminary Injunction Did Not Violate the Law of the Case

Choi contends the court's order violated the law of the case because, in September 2024, Judge Goorvitch held that questions about use of evidence in arbitration were for the arbitrator to

decide. Specifically, by ordering Choi to return the confidential documents to 4DX and certify that he retained no copies of the documents, Choi contends the order prohibits him from using those documents in arbitration, in contravention of Judge Goorvitch's mandate that the arbitrator decide such issues.

First, the injunction expressly states Choi "may retain copies of documents provided by the Parties in discovery in the arbitration, subject to the protective order in place in the arbitration, and subject to further order by the arbitrator regarding any use thereof in the arbitration." The order expressly contemplates that the arbitrator will decide whether any confidential documents produced in discovery can be used in the arbitration.

To the extent Choi has confidential documents he intended to use that were not produced in discovery in the arbitration, Choi does not explain why he cannot simply request those documents from 4DX. Choi admits "discovery is still ongoing in the Arbitration." (Italics removed.) If he has the right to possess and use certain documents, he may simply make a demand for them and, should 4DX refuse to produce them, file a motion to compel before the arbitrator. The preliminary injunction ordered 4DX to make "an exact mirror image of any electronic information, and an exact duplicate copy of any physical information" Choi returned, and to maintain those copies "with no changes in a segregated and secure place until further order of this Court."

Choi also admits he "had raised issues of privilege waiver with the Arbitrator, but he had not yet made a final determination on any waiver of privilege." Choi does not explain why the order enjoins the arbitrator from making such a final

determination, and we do not see that it does. The order expressly states that "[t]he arbitrator retains discretion to make all decisions regarding any documents used in the arbitration. To the extent this motion requests an order [that] contradicts the September 13, 2024 order reserving to the arbitrator the right to decide matters within the four corners of the arbitration, that part of the motion is DENIED."

## 2. The Preliminary Injunction Did Not Impermissibly Alter the Status Quo

Choi also complains the court's preliminary injunction altered the status quo by ordering him to return the confidential documents and destroy any copies he had of them. Choi's argument depends on his characterization of "status quo." Choi is correct that ordering him to return the confidential documents changed the state of affairs that existed when 4DX made the request. But it restored the status quo before the confidential documents were taken. (See *Pillsbury, Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279, 1282, 1289 [where "documents were removed improperly from PM&S and wrongfully possessed by Schectman as the agent of whomever it was who improperly removed the documents," injunction mandating return of documents "return[s] to the status quo existing at the time the documents were taken"].) Further, the order requiring 4DX to make an exact mirror image of any electronic documents and an exact copy of any physical documents preserves the status quo so as not to prejudice Choi pending litigation and final determination of the issues.

In any case, injunctions changing the status quo are permissible—they simply require we " 'scrutinize it even more

closely for abuse of discretion.' " (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446.)

### 3. The Preliminary Injunction Was Supported by Substantial Evidence

### (a) Irreparable Harm

Choi argues 4DX failed to demonstrate it would suffer irreparable harm without the preliminary injunction because they knew he possessed confidential documents in November 2022 but waited until August 2024 to file their complaint, and because there was no evidence Choi would disclose or use the documents outside of arbitration. Choi further contends he was the one who would be harmed by the injunction because he would be deprived of evidence he could use in the arbitration.

We addressed above Choi's contention that he would suffer from being deprived of evidence he could use in the arbitration— he was permitted to retain any documents already produced through discovery (subject to any current and future protections put in place by the arbitrator), and nothing prevented Choi from requesting the returned documents from 4DX through discovery in the arbitration.

Regarding whether 4DX would suffer harm, in support of their motion for preliminary injunction, 4DX submitted a declaration from the 4DX US's CEO. Therein, 4DX explained how, during the arbitration, Choi produced confidential documents but refused to produce all documents he retained following the termination of his employment. Of the documents Choi did produce, they included "signed contracts pre-dating Choi's hire by 4DX US," "4DX Korea's signed contracts with third-party entities," and "countless emails pertaining to various

32

aspects of one or more of the 4DX US'[s] operations or personnel issues on which Choi is not even a recipient of said emails." 4DX stated they never gave Choi permission to retain these documents. Choi also refused to provide 4DX a sworn statement "detailing the instances in which he has shared such information or used such information on behalf of any non-4DX US entity since his 4DX US employment ended."

From these facts, the court could reasonably conclude that Choi had intentions of using 4DX's confidential information outside the arbitration. As the court stated, while Choi "declares that he *would* not improperly use the documents beyond the arbitration, the fact remains that he *could* do so, as he is fighting this injunction even after this Court has made clear before this hearing that the Court's ruling will be limited in scope to non-arbitration." Additionally, " 'once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure.' " (*Korea Data Sys. Co. v. Sup. Ct.* (1997) 51 Cal.App.4th 1513, 1516.) A "loss of a privilege against disclosure" "plainly threatens immediate harm." (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439.) While the length of time it took for 4DX to commence its court action potentially weighs against a finding of irreparable harm, Choi presents no authority holding this is a dispositive factor.

Therefore, we conclude the court did not act outside the bounds of reason in determining 4DX would suffer irreparable harm absent the injunction.

33

### (b) Likelihood of Prevailing

The court found 4DX was likely to prevail on its claims for conversion, negligence, and breach of the duty of loyalty.[9] The elements of conversion are: "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119.) The elements of negligence are: "the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) The elements of breach of the duty of loyalty are: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410.)

Choi does not dispute 4DX owns the confidential documents in question, or that, as in-house counsel for 4DX US, he had a duty not to disclose them without 4DX's permission.[10] And while

---

[9] We need not consider whether 4DX showed a likelihood of prevailing on their causes of action for breach of the PIIA, breach of the confidentiality agreement, violation of Penal Code section 502, and unfair business practices, because they dismissed these claims.

[10] In his reply brief, Choi argues he cannot convert documents if all he has are copies. First, "[a]s this argument was first raised in the reply brief, it is forfeited." (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 926, fn. 7.) In any case, 4DX asserts ownership of any copies of its confidential documents as well.

34

Choi does dispute whether 4DX showed a likelihood of proving damages, it was not unreasonable for the court to conclude 4DX had demonstrated such a likelihood because " 'once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure' " (*Korea Data Sys. Co. v. Sup. Ct.*, *supra*, 51 Cal.App.4th at p. 1516) and a "loss of a privilege against disclosure" "plainly threatens immediate harm" (*O'Grady v. Superior Court*, *supra*, 139 Cal.App.4th at p. 1439).

Regarding the likelihood that 4DX could prove that Choi used confidential documents in a way that was inconsistent with 4DX's property rights or was a breach of Choi's duty to 4DX, as discussed above, 4DX submitted a declaration from 4DX US's CEO, in which 4DX explained Choi had produced "signed contracts pre-dating Choi's hire by 4DX US," "4DX Korea's signed contracts with third-party entities," and "countless emails pertaining to various aspects of one or more of the 4DX US'[s] operations or personnel issues on which Choi is not even a recipient of said emails." Additionally, Choi refused to produce all documents he retained after his employment ended or provide 4DX with a statement describing when he had shared the information. From these facts, the court could have reasonably inferred that Choi had used the documents beyond his employment arbitration.

Citing *Erhart v. Bofi Holding, Inc.* (S.D.Cal., Feb. 14, 2017, Case Nos. 15-cv-02287-BAS-NLS; 15-cv-02353-BAS-NLS) 2017 U.S.Dist. Lexis 20959 (*Erhart*), *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294 (*Fox Searchlight*), and *Chubb & Son v. Superior Court* (2014) 228 Cal.App.4th 1094 (*Chubb*), Choi contends the court erred because "he has not done anything

with any of the Employment Documents that he is not entitled to do under California law." We find Choi's cases distinguishable.

### (i) *Erhart*

In *Erhart*, an auditor sued his former employer alleging retaliation for reporting unlawful conduct. (*Erhart*, *supra*, 2017 U.S.Dist. Lexis 20959 at *2.) The employer countersued for publishing its confidential information and deleting files from his company laptop. (*Ibid.*) The employer then moved for summary adjudication of the employee's affirmative defenses relating to whistleblower protections. (*Ibid.*) In opposing summary adjudication, the employee declared "he 'was very careful in [selecting] the information [he] accessed and turned over. Each document was specifically related to one of the allegations of wrongdoing [he] had discussed with [his supervisor] and then reported to federal law enforcement.' [Citation.] Further, Erhart states 'every document' he used was one he 'had properly accessed in the course of performing [his] work as an internal auditor,' as directed by his immediate supervisor." (*Id.* at *35–*36.) The district court therefore denied summary adjudication as to the employee's whistleblower affirmative defenses because "it is possible that a public policy exception may cover Erhart's conduct, and there is a genuine issue for trial as to whether Erhart's removal of documents was 'reasonably necessary' to support his allegations of wrongdoing." (*Id.* at *36.)

*Erhart* is unhelpful to our consideration of this appeal because the defendant was not an attorney. As our Supreme Court recognized, "an attorney labors under unique ethical imperatives that *exceed* those of the corporate executive who seeks, say, a tort remedy after being terminated for refusing to

36

join a conspiracy to violate the antitrust laws." (*General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1172.)

Additionally, the employee in *Erhart* stated every document he used was specifically related to one of the allegations of wrongdoing he had discussed with his supervisor and then reported to federal law enforcement, and was one he properly accessed during his job as directed by his supervisor. However, according to 4DX, Choi refused to outline what documents he had or when and with whom he had shared them, and possessed documents he was not authorized to have.

### (ii) *Fox Searchlight* and *Chubb*

In *Fox Searchlight*, former in-house counsel and her employer sued each other for wrongful termination and for "disclosing confidential and privileged information to the attorneys handling her wrongful termination case," respectively. (*Fox Searchlight*, *supra*, 89 Cal.App.4th at pp. 297–298.) The employer moved to disqualify the employee's lawyers because the employee disclosed the employer's confidential and privileged information to her lawyers. (*Id.* at p. 302.) In affirming the denial of this motion, the appellate court held that "former in-house counsel may disclose to her attorney all facts relevant to the termination, including employer confidences and privileged communications" but expressly did not decide "whether the former in-house counsel or her attorney can be held liable to the employer for the public disclosure of those confidences and communications." (*Id.* at p. 308.)

In *Chubb*, an attorney working for a firm that represented an insurance company's clients sued that firm for wrongful termination. (*Chubb*, *supra*, 228 Cal.App.4th at p. 1096.) As part of her lawsuit, she requested documents from the insurance

37

company relating to her work performance.  (*Id.* at p. 1099.)  The insurance company interposed objections "to the extent [plaintiff] Lemmon sought confidential information of third parties, or documents or information protected from disclosure under the attorney-client privilege, the work product doctrine, or the duty of attorneys to maintain client confidences."  (*Ibid.*)  The insurance company "took the position that any review and redaction of responsive documents would have to be conducted by the parties themselves (e.g., [insurance company] Chubb and Lemmon)—and not their respective counsel in this employment litigation— because the attorney-client privilege precluded Chubb and Lemmon from disclosing the information even to their attorneys." (*Ibid.*)  The trial court ordered the insurance company "to provide its attorneys with responsive documents to determine what should be produced, withheld, or redacted in response to the four document requests," and the insurance company petitioned for a writ of mandate.  (*Id.* at pp. 1108, 1097.)  The appellate court denied the petition, citing *Fox Searchlight*.  (*Id.* at p. 1108.)

Here, if the court credited 4DX's evidence—as it was entitled to do—there was no way to determine if the documents Choi shared with his attorney were limited to those Choi reasonably believed were  necessary to prosecute his wrongful termination case, or whether there were careful controls implemented regarding disclosures, because Choi refused to tell 4DX when and with whom he had shared what documents.

We conclude substantial evidence supports the court's conclusions that 4DX was likely to succeed on the merits and would suffer irreparable harm without the injunction, and therefore correspondingly conclude it did not abuse its discretion in issuing the preliminary injunction.

## DISPOSITION

The trial court's orders are affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED


                                              M. KIM, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.